UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JUAN PEREZ,<br><br>    Plaintiff,<br><br>v.<br><br>COBB COUNTY, COBB COUNTY POLICE DEPARTMENT, and THOMAS BASTIS,<br><br>    Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Juan Perez and files this Complaint against Defendants Cobb County, Cobb County Police Department, and Thomas Bastis, respectfully showing the Court as follows:

### INTRODUCTION

1. This is a 42 U.S.C. § 1983 case involving what one detective described as "bizarre" allegations of sexual abuse involving Plaintiff's four-year-old daughter. Although one seasoned detective found no clear indication of abuse, Detective Thomas Bastis of the Cobb County Police Department ignored evidence of Mr. Perez's innocence, filed false police reports, and gave false testimony to a Cobb County Magistrate Judge.

2.     Because of Detective Bastis's malicious actions, Mr. Perez was arrested, falsely accused of child molestation, strip-searched, and jailed for 27 days without bond. As a further direct result of Detective Bastis's malicious conduct, Mr. Perez was left homeless for six months in Cobb County until all of the charges were dismissed. Mr. Perez brings this action under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution to recover for the deprivation of his civil rights and his injuries.

## PARTIES, JURISDICTION, AND VENUE

3.     Plaintiff Juan Perez is a citizen of Chile and a former legal resident of the United States. By filing this Complaint, he avails himself of the jurisdiction and venue of this Court.

4.     Defendant Cobb County (the "County") is a political subdivision of the State of Georgia, which can sue and be sued, within the Atlanta Division of the Northern District of Georgia. The Cobb County Board of Commissioners (the "Board") is the County's governing authority. Under Federal Rule of Civil Procedure 4(j)(2) and O.C.G.A. § 9-11-4(e)(5), the County may be served with process through the Board's chairman, Tim Lee, at 100 Cherokee Street, Marietta, Georgia 30090. The Court has personal jurisdiction over the County.

5. Defendant Cobb County Police Department (the "County Police") is an agency of the County. It too resides within the Atlanta Division of the Northern District of Georgia. Under Federal Rule of Civil Procedure 4(j)(2) and O.C.G.A. §§ 9-11-4(e)(5) and 9-11-4(e)(7), it may be served with process through the Board's chairman, Tim Lee, at 100 Cherokee Street, Marietta, Georgia 30090, the Chief of Police, John Houser, at 140 North Marietta Parkway, Marietta, Georgia 30060, or whomever else is authorized to receive service of process for the County Police. This Court has personal jurisdiction over the County Police.

6. Defendant Thomas Bastis is a detective employed by the County Police. At all relevant times, his actions were ministerial, not discretionary, and he was acting in the course and scope of his employment. He resides within the Atlanta Division of the Northern District of Georgia. Under Federal Rule of Civil Procedure 4(j)(2) and O.C.G.A. § 9-11-4(e)(7), he may be served with process at 141 Berkshire Drive, Hiram, Georgia 30141 or wherever else he may be found and served by law. This Court has personal jurisdiction over Detective Bastis.

7. Mr. Perez provided timely provided the County, the County Police, and Detective Bastis with proper *ante litem* notice under O.C.G.A. § 36-11-1. *See* Ex. A, Letter from H. Maddox Kilgore, Kilgore & Rodriguez LLC, to Deborah Dance,

Cobb County Attorney's Office (July 14, 2015). Mr. Perez has satisfied all prerequisites for his claims here.

8. This Court has subject-matter jurisdiction here under 28 U.S.C §§ 1331 and 1343(a)(3)–(4) because this case arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. At all relevant times, the County, the County Police, and Bastis acted under color of the statutes, ordinances, regulations, customs, and usages, of Georgia. Mr. Perez's claim for declaratory judgment is authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 75. The Court has supplemental jurisdiction over Mr. Perez's state-law claims under 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because events and omissions giving rise to the claim occurred in Cobb County, Georgia, which is within the Northern District of Georgia. Venue is proper in this division under Local Rule 3.1B(3) because the cause of action arose here.

## FACTUAL BACKGROUND

10. In 2012, Mr. Perez and his former wife, Amanda Perez, were embroiled in a bitter custody–visitation dispute over their four-year-old daughter. To protect the Perezes' daughter, we refer to her as GP. Unfortunately, as commonly occurs in such disputes, Ms. Perez began falsely reporting to the Department of Family and

Children Services ("DFACS") that Mr. Perez had sexually abused GP. Mr. Perez has never sexually abused GP, nor would he ever abuse her.

### Detective Largent Finds No Clear Indication of Sexual Abuse Amid "Bizarre" Allegations.

11.     Detective Carol Largent of the County Police's Crimes Against Children unit—a seasoned investigator and an authority on child sex crimes—thoroughly investigated Ms. Perez's allegations.

- She conducted a forensic evaluation of GP, who never said she had been sexually abused—indeed, she said nothing about sexual abuse or any conduct by Mr. Perez that could rationally be construed as sexual abuse.

- She reviewed the results of a sexual assault examination of GP at Scottish Rite where the physician opined that GP had not been sexually assaulted.

- She interviewed Mr. Perez—who voluntarily waived his right to counsel and his right to remain silent—about the allegations.

Based on her investigation and the medical findings, Detective Largent concluded that Mr. Perez should not be charged, and the matter was closed in July 2012.

12. Unsatisfied and undeterred, Ms. Perez and her mother took GP to Medlin Treatment Center ("Medlin") in August 2012 where they told a psychologist that Mr. Perez was sexually abusing his daughter. But not once in GP's first hour-long session with the psychologist did she suggest that she had been sexually abused. Nor did she allege conduct by Mr. Perez which could rationally be construed as sexual abuse. And in the second session with a Medlin psychologist, GP specifically denied that her father had ever touched her private parts.

13. Not content with the opinions of a physician, a seasoned child-crimes detective, and a psychologist, Ms. Perez took GP back to Medlin for another session with a different psychologist. Although GP described playing a game (toddler horseplay) with Mr. Perez and that he purportedly licked her buttocks, she quickly—and without solicitation—corrected herself to say that that was untrue.

14. When the psychologist reminded GP that she needed to tell the truth, GP denied that Mr. Perez had ever licked her buttocks. She also denied that he had touched her private parts. She denied touching his private parts. She denied that he had exposed himself to her. She denied that she had been asked to show him her private parts. And she denied being exposed to adult nudity or sexuality.

15. Detective Largent extended her investigation into those new, albeit recanted, allegations. She interviewed the Medlin psychologist who had performed the

Sexual Trauma Investigation. After that interview and after reviewing the psychologist's report, Detective Largent advised Ms. Perez that, "based on the information I had received from Medlin, there did not seem to be clear indication of sexual abuse."

16. Even so, Detective Largent diligently continued her investigation, interviewing Mr. Perez for a second time in September 2012. Although Mr. Perez knew the investigation was based on false allegations, he again waived his rights and fully cooperated with law enforcement. Recognizing the obvious false allegations resulting from the custody battle, Mr. Perez's attorney likewise consented to Plaintiff's interrogation by the detective.

17. Detective Largent also interviewed Ms. Perez's sister, Anna Morales, who was familiar with all the parties involved. Morales described the allegations of sexual abuse as "ridiculous." Morales told Detective Largent that Ms. Perez just wanted Mr. Perez out of GP's life. Morales's statements are consistent with the findings of the DFACS caseworker, who noted that the Perezes "are going through a nasty divorce, where they are constantly accusing each other of things."

18. Detective Largent inactivated the case in September 2012, concluding that there "did not appear to be a clear indication of sexual abuse," and describing the allegations against Mr. Perez as "bizarre."

## In Sixteen Months of Psychological Interviews
## GP Repeatedly Denies Sexual Abuse.

19. Detective Largent's investigation and decision not to charge Mr. Perez did not sit well with Ms. Perez. So she denied Mr. Perez any contact with GP and forced GP to continue unnecessary therapy at Medlin for some 16 months. During that time, GP made wildly inconsistent statements to her psychologist in several hour-long sessions, according to the reports. The psychologist—who is required by law to report child abuse—never notified the County Police of any new allegations against Mr. Perez for a simple reason: there were none.

20. In fact, GP repeatedly denied sexual abuse, or any behavior by her father which could reasonably by construed as sexual abuse:

- October 12, 2012—GP specifically "denied that her father touched her on her toon-toon or her butt." "She further denied any touching between herself and her father."

- October 17, 2012—GP said she did not want her father to move away, and that "she wants to see her father … that she misses him."

- January 11, 2013—GP again denied any sexual abuse, expressing no memory of her father touching her private parts.

- January 25, 2013—GP again denied any sexual abuse and "denied recalling that [her father] touched her inappropriately. She denied remembering that she ever told someone that her father touched her."

- January 3, 2014—GP denied any sexual abuse by her father, telling the psychologist that "she only recalls her father looking at her [private parts] and not doing anything else."

21. From his home in Chile, Mr. Perez continued to pursue visitation rights. For example, he turned down an offer by Ms. Perez to terminate child-support obligations and forgive a $50,000 debt if he would relinquish all parental rights. Mr. Perez rejected that offer without hesitation: he wanted a relationship with his daughter. To that end, he even agreed to fly from Chile to the United States to undergo a psychological evaluation by GP's psychologist.

**Detective Bastis Ignores Exculpatory Evidence and Maliciously  
Files False Reports to Have Mr. Perez Arrested.**

22. Some 15 months after the investigation was inactivated and with the visitation and custody battle still raging, Ms. Perez pressured the County Police to re-open it. She called the County Police's Crimes Against Children Office, making false allegations about GP's statements in therapy. For instance, she claimed, "[GP]

had made consistent statements regarding the alleged sexual abuse during her therapy with Dr. Gifford." But in the more than a year since Detective Largent closed her investigation, Mr. Perez had had no contact with GP. He had been out of the country, on a different continent. Nor had GP's psychologists notified the County Police of any new allegations of abuse—there were none.

23. Because Detective Largent had retired, the case was reassigned to Detective Bastis.

24. Detective Bastis knowingly, willfully, and with reckless indifference, ignored the obvious and overwhelming evidence of Mr. Perez's innocence in his possession: Detective Largent's investigative file. He filed false police reports, leaving out material and exculpatory facts, intentionally misleading his supervisors. In one report, for example, Detective Bastis falsely stated that Detective Largent did not interview GP or any of the parties involved. But Detective Largent had interviewed GP, and she had interviewed Mr. Perez—twice.

25. In a supplemental report, Detective Bastis summarized GP's sessions at Medlin, claiming GP's only consistent disclosure was that Mr. Perez "licks her butt." Nowhere in that summary did Detective Bastis report that GP immediately recanted that statement or the six sessions in which she specifically denied any abuse. By any reading of Detective Bastis's reports, the District Attorney's Office

could not have known that the Medlin reports were brimming with exculpatory evidence.

26. Detective Bastis interviewed GP, and yet again, she never suggested that Mr. Perez had sexually abused her.

27. A few days later, Detective Bastis interviewed GP's therapist at Medlin and reviewed the treatment records. There, he learned that GP had not made consistent allegations of sexual abuse and that she had repeatedly denied any sexual abuse.

28. That same day, Ms. Perez emailed Detective Bastis directly (calling him "Tom"), claiming that Mr. Perez would be returning to the United States soon, but purportedly did not know his intentions or plans. What she did not tell him was that Mr. Perez was returning for the specific purpose of undergoing a psychological examination with GP's psychologist to get visitation rights. Instead, she insinuated that Mr. Perez's trip was for some nefarious purpose.

29. Rather than make even a cursory inquiry, Detective Bastis took the bait. And a week later—without any additional investigation—he got an arrest warrant for Mr. Perez on charges of aggravated sodomy and child molestation. Here is some of the exculpatory evidence he failed to disclose when he sought the warrant:

- The forensic interview of GP where GP denied any sexual abuse.

- The Medlin reports which contain specific denials of sexual abuse in no less than six separate sessions.

- The DFACS reports wherein no allegations of abuse were substantiated.

- The context—an acrimonious custody dispute and Mr. Perez voluntarily returning to the United States just before a scheduled psychological examination in order to obtain visitation rights.

- The multiple interviews of Mr. Perez wherein he waived his constitutional right to remain silent in order to help resolve the matter.

- The conclusion Detective Largent reached: that there "did not appear to be a clear indication of sexual abuse," and that the allegations were "bizarre."

- The second interview of GP—the one Detective Bastis's conducted—where GP alleged no sexual abuse.

30. In short, Detective Bastis had

- no physical evidence of abuse,
- no medical evidence of abuse,
- no eyewitness to any abuse,
- no admission or confession,

- no substantiation of abuse following a DFACS investigation,
- no report of abuse to the County Police from GP's psychologist in some 17 months of therapy,
- no probable cause found by Detective Largent, and
- GP's repeated denials of abuse.

And yet he somehow convinced a magistrate to issue an arrest warrant.

31. On February 05, 2014, Mr. Perez flew from Chile to Georgia for a psychological evaluation to get visitation with his daughter. He had no reason to suspect that an unknown Cobb County detective would maliciously, and without sufficient investigation, obtain a warrant for his arrest.

32. When Mr. Perez arrived at Hartsfield-Jackson International Airport, armed law enforcement agents seized him, handcuffed him, and locked him in a place meant for criminals. A foreigner in a foreign jail, he was terrified and alone.

33. From there, authorities took him to the Cobb County Adult Detention Center where he was stripped of his possessions and clothing. The officers ordered him to undress and strip-searched him, probing his genitals and anus. Compounding that trauma, Mr. Perez was then advised that he was charged with sexually abusing his beloved daughter.

34. He became hopeless and despondent when made aware that he would remain a prisoner because he had no bond. He then languished in jail for 27 days without bond.

### Detective Bastis Gives False Testimony at the Probable Cause Hearing.

35. In a March 4, 2014, probable cause hearing, Detective Bastis knowingly gave false testimony or, at best, egregiously misleading testimony. Here is a sample of that testimony:

| Detective Bastis's Testimony | The Evidence |
|---|---|
| "Dr. Gifford said that the first few sessions with [GP], that she did disclose that she had sat on her father's face while naked, and he had licked her butt; specifically, the inside of her butt. Dr. Gifford stated from that [sic] August 2012, until October 2012, she was consistent with that disclosure." | • During the very first session with Dr. Gifford on August 1, 2012, GP made no allegations of sexual abuse.<br>• During the second session on August 8, 2012, GP specifically denied that her father had touched her private parts.<br>• During the third session on August 15, 2012, GP specifically denied that her father licked her butt. |

| **Detective Bastis's Testimony** | **The Evidence** |
| --- | --- |
| In response to the court's question about "new or different" disclosures aside from that recanted one, Detective Bastis responded, "Through therapy, yes. In September, and she continued in October of 2012, continued consistent disclosure of what the charges are, of her sitting on her father's face and him licking her butt. She was consistent with that." | There was no new or different disclosure. In fact, there were only denials of any abuse—repeated denials in at least six separate sessions. |
| When the court asked if there was anything in Detective Largent's file indicating why she closed the investigation, Detective Bastis evaded the question. | Detective Largent's reason for closing the investigation: "The allegations in this case, although bizarre, do not appear to be a clear indication of sexual abuse. *There is insufficient evidence to take legal action in this case*, it will therefore be place on inactive status." |

36.   Worse still, less than two months before the hearing, Detective Bastis interviewed GP, using anatomical drawings to ask her about improper touching and sexual abuse. GP disclosed no sexual abuse. By failing to disclose that information to the magistrate court, Detective Bastis knowingly withheld material and exculpatory evidence relevant to the issue of probable cause.

37.   Because of Detective Bastis's false testimony, the magistrate court found probable cause, specifically relying on the erroneously provided information

that "the fact that the child is in ongoing therapy and has been consistent in the essential parts with the allegations."

38.     Although the charge of aggravated sodomy carries a possible sentence of life imprisonment, the magistrate court ordered that bond be set at $10,000 and that Mr. Perez be released on his own recognizance. Among the conditions of his release on bond, however, Mr. Perez was prohibited from having any contact with GP and was required to surrender his passport and remain in Cobb County. The false testimony of Detective Bastis at the probable cause hearing left Perez homeless for the next six months, effectively still a prisoner of the County.

### The Grand Jury Issues a No Bill, and the Case Against Mr. Perez is Dismissed.

39.     In June 2014, in a secret proceeding before a grand jury, Detective Bastis testified as the only witness, presumably offering the same false testimony as he gave at the probable cause hearing. With no rebuttal evidence, it should come as no surprise that the grand jury returned a true bill of indictment charging Mr. Perez with two counts of aggravated sodomy and one count of child molestation. *See State v. Perez*, Cobb County Superior Court Indictment 14-9-1981.

40.     Mr. Perez challenged the legality of that indictment.

41.  Over the next two months, the Cobb County District Attorney's Office presumably reviewed the evidence, including Detective Bastis's reports, the Medlin reports, Detective Bastis's and Largent's forensic interviews of GP, and Detective Bastis's testimony at the probable cause hearing. The County Police did no more investigating during that time. No witnesses recanted their testimony. And no additional evidence was discovered. The District Attorney merely reviewed the file.

42.  In August 2014, a second grand jury convened to consider the case against Mr. Perez—the same case presented to the grand jury in June. This time, the grand jury declined to indict Mr. Perez on a single charge after hearing from Detective Bastis, choosing instead to issue a No Bill. *See State v. Juan Perez*, Cobb County Superior Court No Bill 14-9-3034.

43.  The Cobb County Superior Court dismissed the original June 2014 indictment. There are no charges presently pending against Juan Perez.

## LEGAL LIABILITY

### Count I
### Violation of the Fourth and Fourteenth Amendments Under 42 U.S.C. § 1983

44.  Mr. Perez incorporates the paragraphs above verbatim into this count.

45.  The County, County Police, and Detective Bastis are liable for violating § 1983 by acting under color of state law to deprive Mr. Perez of his constitutional

right to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments.

46. The County and County Police are liable for Detective Bastis's conduct under respondeat superior. If Detective Bastis is found to have acted outside the scope of his employment, then he is personally liable for his unlawful conduct.

47. As a direct and proximate result of the County, County Police, and Detective Bastis's unlawful actions, Mr. Perez has suffered and will continue to suffer damages, including physical and mental injuries.

## Count II
## Malicious Prosecution

48. Mr. Perez incorporates the paragraphs above verbatim into this count.

49. Mr. Perez was subjected to a criminal prosecution instigated by all of the Defendants that was carried on maliciously and without any probable cause.

50. The County and County Police are liable for Detective Bastis's conduct under respondeat superior. If Detective Bastis is found to have acted outside the scope of his employment, then he is personally liable for his unlawful conduct.

51.  As a direct and proximate result of the Defendants' malicious prosecution, Mr. Perez has suffered and will continue to suffer damages, including physical and mental injuries.

### Count III
### Punitive Damages

52.  Mr. Perez incorporates the paragraphs above verbatim into this count.

53.  The Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care that would raise the presumptions of conscious indifference to the consequences.

54.  Under O.C.G.A. § 51-12-5.1, Mr. Perez is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Perez respectfully prays for relief as follows:

(a)  That the Court declare that the County, County Police, and Detective Bastis's conduct violated the Fourth and Fourteenth Amendments to the United States Constitution;

(b)  That the Court award him compensatory damages on all counts;

(c)  That the Court award him punitive damages under O.C.G.A. § 51-12-5.1;

(d)  That the Court award him attorney's fees under 42 U.S.C. § 1988;

(e)  That the Court award him the costs of suit under 42 U.S.C. § 1920; and

(f)  That the Court award him any other relief necessary to do justice.

## JURY DEMAND

Mr. Perez demands a jury trial on all issues so triable.

Dated: March 21, 2016.            Respectfully submitted,

/s/ *Kenneth B. Hodges III*
Kenneth B. Hodges III
Georgia Bar No. 359155
Andre T. Tennille III
Georgia Bar No. 940510
KEN HODGES LAW LLC
2719 Buford Highway, N.E.
Atlanta, Georgia 30324
(404) 692-0488
Ken@KenHodgesLaw.com
Dre@KenHodgesLaw.com

/s/ *H. Maddox Kilgore*
/s/ *Carlos J.Rodriguez*
H. Maddox Kilgore
Georgia Bar No. 417548
Carlos J. Rodriguez
Georgia Bar No. 784163
KILGORE & RODRIGUEZ LLC
36 Ayers Avenue
Marietta, Georgia 30060
(770) 693-4638
kilgore.law@comcast.net
cjrodriguez.law@gmail.com

*Counsel for Plaintiff Juan Perez*