UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JUAN PEREZ,<br><br>     Plaintiff,<br><br>v.<br><br>COBB COUNTY and THOMAS BASTIS, in his individual and official capacities,<br><br>     Defendants. | Civil Action No. 1:16-cv-00902-SCJ |

## SECOND AMENDED COMPLAINT

Juan Perez files this Second Amended Complaint against Cobb County and Thomas Bastis, respectfully showing the Court as follows:

## INTRODUCTION

1.    This is a 42 U.S.C. § 1983 case involving what one detective described as "bizarre" allegations of sexual abuse involving the Perezes' four-year-old daughter, allegations coming from Mr. Perez's now ex-wife during an acrimonious divorce. Detective Bastis ignored evidence—and another detective's findings—of Mr. Perez's innocence and filed false police reports. So Mr. Perez was maliciously prosecuted for a crime he never committed. What's more, he was strip-searched and

jailed for 27 days without bond. When he got out, he was left homeless for six months—in effect, still a prisoner of Cobb County until the charges were dismissed. Mr. Perez sues to recover for the deprivation of his civil rights and his injuries.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Juan Perez is a Chilean citizen and formerly a legal resident of the United States. By filing this First Amended Complaint, he avails himself of this Court's jurisdiction and venue.

3.      Defendant Cobb County (the "County") is a political subdivision of the State of Georgia that can sue and be sued, residing within the Atlanta Division of the Northern District of Georgia. Under Federal Rule of Civil Procedure 5(b)(1), the County may be served through its attorney.

4.      Defendant Thomas Bastis is a detective employed by the Cobb County Police Department (the "County Police"). His actions here were discretionary, then they were done with willfulness, malice, and corruption and with the intent to cause injury. He too resides within the Atlanta Division of the Northern District of Georgia. Under Federal

Rule of Civil Procedure 5(b)(1), Detective Bastis may be served through his attorney.

5.     Mr. Perez provided the Defendants with proper *ante litem* notice, including under O.C.G.A. § 36-11-1.[1] He has satisfied all prerequisites for his claims here.

6.     This Court has subject-matter jurisdiction here under 28 U.S.C §§ 1331 and 1343(a)(3)–(4) because this case arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. At all relevant times, the County and Detective Bastis acted under color of the statutes, ordinances, regulations, customs, and usages of the County and the State of Georgia.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims here occurred in Cobb County, Georgia, which is within the Northern District of Georgia. Venue is proper in this division under Local Rule 3.1B(3) because the cause of action arose here.

---

[1] *See* Letter from H. Maddox Kilgore, Kilgore & Rodriguez LLC, to Deborah Dance, Cobb County Attorney's Office (July 14, 2015).

SECOND AMENDED COMPLAINT

# FACTUAL BACKGROUND
## The County has a pattern and practice of violating civil rights.

8.    The County has a persistent and wide-spread pattern and a permanent and well-settled practice of violating civil rights. It also tacitly authorizes repeated constitutional violations or displays of deliberate indifference toward police misconduct, making its failure to correct constitutionally offensive actions the County's custom or policy. That is confirmed by a recent incident involving County Commissioner Lisa Cupid. After a County police officer harassed and intimidated her, she wrote a memorandum to the County noting that police misconduct is "protocol and prevalent."[2]

---

[2] Memorandum from Lisa Cupid, Cobb Cnty. Comm'r, to Tim Lee, Cobb Cnty. Comm'r, Bob Ott, Cobb Cnty. Comm'r, JoAnn Birrell, Cobb Cnty. Comm'r, Bob Weatherford, Cobb Cnty. Comm'r, David Hankerson, Cobb Cnty. Manager, Deborah Dance, Cobb Cnty. Att'y, Sam Heaton, Dir. of Pub. Safety, John Houser, Cobb Cnty. Chief of Police, Jeff Adcock, Cobb Cnty. Police Precinct II Commander, *CORRECTED - Police Incident Involving Commissioner Cupid on July 14, 2015* (July 17, 2015). *See also, e.g.*, *Silva v. Cobb County*, No. 1:16-cv-03201-MHC (N.D. Ga. 2016) (alleging that the County customarily violates constitutional rights); *Barnes v. Cobb County*, No. 1:14-cv-00948 (N.D. Ga. 2014) (same); *Murdock v. Cobb County*, No. 1:12-cv-01743 (N.D. Ga. 2012) (same).

SECOND AMENDED COMPLAINT

9.     This case shows the County's custom at work. For example, when Detective Bastis falsified his initial report, his supervisor signed off on it, and the County Police did nothing to correct it. When he falsified his supplemental report, his supervisor signed off on that too, and the County Police did nothing to correct it. As a result, Mr. Perez was jailed for 27 days and maliciously prosecuted for a crime he didn't commit.

### Amanda Perez cooks up allegations of sexual abuse to keep Mr. Perez from his daughter.

10.     In 2012, Mr. Perez and his former wife, Amanda Perez, were embroiled in a bitter custody–visitation dispute over their four-year-old daughter, GP.[3] As happens all too often in these disputes, one party endeavors to smite the other. Here, that was Ms. Perez. She began by falsely reporting to the Department of Family and Children Services ("DFACS") that Mr. Perez had sexually abused GP.

11.     But Mr. Perez has never sexually abused GP, and he never would.

_____

[3] To protect the Perezes' daughter, we refer to her as GP.

SECOND AMENDED COMPLAINT

### Detective Largent finds no clear indication of sexual abuse amid "bizarre" allegations.

12.     Detective Carol Largent of the County Police's Crimes Against Children Unit—a seasoned detective and an authority on child sex crimes—thoroughly investigated Ms. Perez's allegations:

- She conducted a forensic evaluation of GP, who said nothing of sexual abuse, or any abuse for that matter.

- She reviewed the results of a sexual-assault examination of GP in which the physician concluded that GP had not been sexually assaulted.

- And she interviewed Mr. Perez, who waived his rights to counsel and to remain silent.

13.     Based on her investigation and the medical findings, Detective Largent concluded that Mr. Perez should not be charged. So the matter was inactivated in July 2012.

14.     Unsatisfied and undeterred, Ms. Perez took GP to the Medlin Treatment Center ("Medlin") where Ms. Perez told a psychologist the sexual-abuse story. But not once in GP's first hour-long session with the psychologist did she suggest that she had been sexually abused. Nor did she allege anything that could rationally be construed as sexual abuse. And in the second session, she specifically *denied* sexual abuse.

SECOND AMENDED COMPLAINT

15.    Not content with the findings of a physician, a seasoned child-crimes detective, and a psychologist, Ms. Perez took GP back to Medlin for another session with a different psychologist. Although GP described some horseplay in which Mr. Perez purportedly licked her buttocks, she quickly—and without solicitation—corrected herself, saying that it was untrue.

16.    In fact, when the psychologist reminded GP that she needed to tell the truth, GP denied that Mr. Perez had ever licked her buttocks. She also denied that he had touched her private parts. She denied touching his private parts. She denied that he had exposed himself to her. She denied that she had been asked to show him her private parts. And she denied being exposed to adult nudity or sexuality.

17.    Detective Largent investigated this new, albeit immediately recanted, allegation. She interviewed GP's psychologist. After that interview and after reviewing the psychologist's report, Detective Largent advised Ms. Perez, "based on the information I had received from Medlin, there did not seem to be a clear indication of sexual abuse."

SECOND AMENDED COMPLAINT

18.     Even so, Detective Largent diligently continued her investigation, interviewing Mr. Perez for a second time. He again waived his rights and fully cooperated with law enforcement.

19.     Detective Largent also interviewed Ms. Perez's sister, Anna Morales. Morales described the allegations as "ridiculous," saying that Ms. Perez just wanted Mr. Perez out of GP's life. This is consistent with the findings of the DFACS caseworker, who noted that the Perezes "are going through a nasty divorce, where they are constantly accusing each other of things."

20.     Detective Largent inactivated the case again in September 2012, concluding that there "did not appear to be a clear indication of sexual abuse," and describing the allegations as "bizarre."

### In 16 months of psychological interviews, GP repeatedly *denies* sexual abuse.

21.     Unhappy with Detective Largent's decision not to charge Mr. Perez, Ms. Perez took matters into her own hands, denying Mr. Perez any contact with GP and forcing her to continue unnecessary therapy. Over the next 16 months, GP made wildly inconsistent statements to her psychologist. The psychologist—who is required by law to report

child abuse—never notified the County Police of any new allegations against Mr. Perez for a simple reason: there were none.

22.    In fact, GP repeatedly denied sexual abuse and denied anything that could reasonably be construed as sexual abuse:

- October 12, 2012—GP specifically "denied that her father touched her … butt" and "denied any touching between herself and her father."

- October 17, 2012—GP said she did not want her father to move away and that "she wants to see her father … that she misses him."

- January 11, 2013—GP again denied any sexual abuse, expressing no memory of her father touching her private parts.

- January 25, 2013—GP again denied any sexual abuse and "denied recalling that [her father] touched her inappropriately. She denied remembering that she ever told someone that her father touched her."

- January 3, 2014—GP denied any sexual abuse.

23.    From his home in Chile, Mr. Perez continued to pursue visitation rights. He turned down Ms. Perez's offer to terminate child-support obligations and forgive a $50,000 debt if he would relinquish his parental rights. He even agreed to fly from Chile to the United States to undergo an evaluation by GP's psychologist.

**Detective Bastis ignores or suppresses exculpatory evidence and files false reports to have Mr. Perez prosecuted.**

24.    Over a year after the investigation was inactivated for a second time and with the custody–visitation battle still raging, Ms. Perez pressured the County Police to re-open the investigation. She called the County Police's Crimes Against Children Office, making false allegations about GP's statements in therapy.

25.    But in the year since Detective Largent had inactivated the case, Mr. Perez had had no contact with GP: he had been out of the country, on a different continent, in a different hemisphere. Nor had GP's psychologists notified the County Police of any new allegations of abuse—there were none.

26.    By then Detective Largent had retired, and the case was reassigned to Detective Bastis. He abandoned Detective Largent's diligent approach, opting instead for one of malice and corruption.

27.    Detective Bastis manufactured a case against Mr. Perez by ignoring obvious—indeed overwhelming—evidence of innocence and filing false police reports. In one report, for example, he claimed that De-

SECOND AMENDED COMPLAINT

tective Largent had not interviewed GP or any of the parties. But Detective Largent had interviewed GP. She had also interviewed Mr. Perez—twice.

28.     In a supplemental report, Detective Bastis summarized GP's sessions at Medlin, claiming her only consistent disclosure was that Mr. Perez "licks her butt." Nowhere in that report did Detective Bastis indicate that GP immediately recanted that statement. Nor did he mention the six sessions in which she specifically denied any abuse.

29.     Detective Bastis's supervisor approved the false statements in those reports. This shows that the County's "prevalent" police misconduct, as Commissioner Cupid put it—that is, its custom and practice—contributed to causing Mr. Perez's malicious prosecution.

30.     Detective Bastis interviewed GP, who again never suggested that Mr. Perez had sexually abused her. This would be one of many pieces of exculpatory evidence that the detective suppressed.

31.     A few days later, Detective Bastis interviewed GP's therapist and reviewed her treatment records. In so doing, he learned that GP had not made consistent allegations of sexual abuse. To the contrary, she had repeatedly denied any kind of sexual abuse. The Medlin reports were brimming with exculpatory evidence.

32.   That same day, Ms. Perez emailed Detective Bastis directly (calling him "Tom"), claiming that Mr. Perez would be returning to the United States soon, and claiming she did not know his plans but insinuating something nefarious. (Mr. Perez was just returning for a psychological examination with GP's psychologist to get visitation rights.)

33.   A week later—without any additional investigation—Detective Bastis got an arrest warrant for Mr. Perez on charges of aggravated sodomy and child molestation. Here is some of the exculpatory evidence Detective Bastis omitted when he sought the warrant:

- The forensic interview of GP where she denied any sexual abuse.

- The Medlin reports which contain repeated, specific denials of sexual abuse in no less than six separate sessions.

- The DFACS reports substantiating that there had been no abuse.

- The context—a "nasty" divorce and Mr. Perez voluntarily returning to the United States just before a scheduled psychological examination for visitation rights.

- The two interviews of Mr. Perez in which he waived his rights.

- The conclusion Detective Largent reached: that there "did not appear to be a clear indication of sexual abuse."

- The second interview of GP—which Detective Bastis conducted himself—in which she alleged no sexual abuse.

34.   In short, Detective Bastis had no physical evidence of abuse, no medical evidence of abuse, no eyewitness to any abuse, no admission and no confession, no substantiation from the DFACS investigation, no report of abuse from GP's psychologist, no probable cause found by Detective Largent, and GP's repeated denials of abuse. Yet Detective Bastis convinced a magistrate to issue an arrest warrant by intentionally omitting exculpatory evidence and by presenting Ms. Perez's story, which even her sister called "ridiculous."

35.   On February 5, 2014, Mr. Perez flew from Chile to Georgia for a psychological evaluation to get visitation with his daughter. When he arrived at Hartsfield-Jackson International Airport, armed law enforcement agents seized him, handcuffed him, and locked him up.

36.   Mr. Perez's arrest was objectively unreasonable.

37.   From there, the authorities took him to the Cobb County Adult Detention Center where he was ordered to undress and was strip-searched. Compounding that trauma, Mr. Perez was then advised that he was charged with sexually abusing his daughter.

38.   Mr. Perez was jailed for 27 days without bond.

SECOND AMENDED COMPLAINT

### Detective Bastis gives false testimony at Mr. Perez's probable-cause hearing.

39.    Less than two months before Mr. Perez's probable-cause hearing, Detective Bastis interviewed GP, using anatomical drawings to ask her about sexual abuse. GP again disclosed no sexual abuse.

40.    At the probable-cause hearing, Detective Bastis gave false testimony, which shows his malice:

| Detective Bastis's Testimony | What Really Happened |
|---|---|
| "Dr. Gifford said that the first few sessions with [GP], that she did disclose that she had sat on her father's face while naked, and he had licked her butt; specifically, the inside of her butt. Dr. Gifford stated from that [sic] August 2012, until October 2012, she was consistent with that disclosure." | • During the first session with Dr. Gifford on August 1, 2012, GP made no allegations of sexual abuse.<br>• During the second session on August 8, 2012, GP *denied* that her father had touched her private parts.<br>• During the third session on August 15, 2012, GP *denied* that her father licked her butt. |

| Detective Bastis's Testimony | What Really Happened |
|---|---|
| In response to the court's question about "new or different" disclosures aside from the recanted one, Detective Bastis responded, "Through therapy, yes. In September, and she continued in October of 2012, continued consistent disclosure of what the charges are, of her sitting on her father's face and him licking her butt. She was consistent with that." | There was no new or different disclosure. In fact, there were only denials of any abuse—repeated denials on at least six separate occasions. |
| When the court asked if there was anything in Detective Largent's file indicating why she inactivated the investigation, Detective Bastis evaded the question. | Detective Largent's reason: "The allegations in this case, although bizarre, do not appear to be a clear indication of sexual abuse. There is *insufficient evidence to take legal action* in this case, it will therefore be place on inactive status." |

41.     In addition to giving false testimony, Detective Perez withheld evidence. He withheld that during his recent interview with GP, she had denied any improper touching—even when he prompted her with an anatomic drawing.

42.     Because of Detective Bastis's false testimony, the magistrate court found probable cause, specifically relying on "the fact that the child … has been consistent in the essential parts" of the allegations. But the only consistent statements GP made were *denials* of sexual abuse of any kind.

43.    Although the magistrate court set bond, the conditions prohibited Mr. Perez from having any contact with GP and required that he surrender his passport and remain in the County. This left Perez homeless for the next six months, a prisoner in the County.

### The grand jury issues a "No Bill," and the case against Mr. Perez is dismissed.

44.    In a June 2014 grand-jury hearing, held in secret, Detective Bastis testified as the only witness. With no rebuttal evidence, it should come as no surprise that the grand jury indicted Mr. Perez on two counts of aggravated sodomy and one count of child molestation.[4]

45.    Mr. Perez challenged the legality of that indictment.

46.    In August 2014, a second grand jury convened to consider the case against Mr. Perez. Again, Detective Bastis told his story. But this time the District Attorney had had a chance to review the file, and the grand jury declined to indict Mr. Perez on a single charge.[5]

---

[4] Indictment, *State v. Perez* (Cobb Cnty. Super. Ct., June 5, 2014) (No. 14-9-1981).

[5] No Bill, *State v. Perez* (Cobb Cnty. Super. Ct., August 28, 2014) (No. 14-9-3034).

47.    The Cobb County Superior Court dismissed the original indictment. Now there are no charges pending against Mr. Perez.

48.    At bottom, the County and Detective Bastis never had even arguable probable cause to arrest Mr. Perez. They never had even arguable probable cause to prosecute him. And Detective Bastis's actions were objectively unreasonable; no reasonable officer would have done what he did.

## THEORIES OF RECOVERY
### Count I—The County and Detective Bastis violated Mr. Perez's Fourth Amendment rights under 42 U.S.C. § 1983.

49.    Mr. Perez incorporates the above paragraphs verbatim into this Count.

50.    Mr. Perez has a Fourth Amendment right not to be arrested or seized without probable cause. Within that right is a right not to be maliciously prosecuted. The County and Detective Bastis had fair warning of those rights.

51.    Mr. Perez was subjected to a criminal prosecution instigated by the County and Detective Bastis that was carried on maliciously and without probable cause.

— 17 —
SECOND AMENDED COMPLAINT

52.     Detective Bastis is liable for violating § 1983 because he intentionally committed acts, acting under color of law, that deprived Mr. Perez of his Fourth Amendment rights.

53.     The County is also liable for violating § 1983 because Detective Bastis's conduct is the product of the County's unlawful customs, policies, and practices. Those customs, policies, and practices are evident from, among other things, repeated incidents where the County's agents, acting under color of law, intentionally deprive citizens of constitutional rights.

54.     As a direct and proximate result of the Defendants' unlawful actions, Mr. Perez has suffered and will continue to suffer damages.

### Count II—Detective Bastis, in his individual capacity, maliciously prosecuted Mr. Perez.

55.     Mr. Perez incorporates the above paragraphs verbatim into this Count.

56.     Mr. Perez was subjected to a criminal prosecution instigated by Detective Bastis that was carried on maliciously and without probable cause.

57.     As a direct and proximate result of that malicious prosecution, Mr. Perez has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Perez respectfully prays for relief as follows:

(a)   That the Court award him compensatory or nominal damages on Count I;

(b)   That the Court award him punitive damages, including under O.C.G.A. § 51-12-5.1 as allowed by law;

(c)   That the Court award him attorney's fees, litigation expenses, and costs, including under 42 U.S.C. §§ 1920 and 1988 and O.C.G.A. § 13-6-11; and

(d)   That the Court award him any other relief necessary to do justice.

## JURY DEMAND

Mr. Perez demands a jury trial on all issues so triable.

SECOND AMENDED COMPLAINT

Dated: March 3, 2016.          Respectfully submitted,

/s/ *Andre T. Tennille III*

Kenneth B. Hodges III
Georgia Bar No. 359155
Andre T. Tennille III
Georgia Bar No. 940510
KEN HODGES LAW LLC
2719 Buford Highway, N.E.
Atlanta, Georgia 30324
(404) 692-0488
ken@kenhodgeslaw.com
dre@kenhodgeslaw.com

H. Maddox Kilgore
Georgia Bar No. 417548
Carlos J. Rodriguez
Georgia Bar No. 784163
KILGORE & RODRIGUEZ LLC
36 Ayers Avenue
Marietta, Georgia 30060
(770) 693-4638
kilgore.law@comcast.net
cjrodriguez.law@gmail.com

*Counsel for Plaintiff Juan Perez*

## **CERTIFICATE OF SERVICE**

I certify that today I filed Plaintiff's Second Amended Complaint through the Court's CM/ECF system, which will automatically serve all counsel of record as follows:

George M. Weaver
HOLLBERG & WEAVER, LLP
2921 Piedmont Road, N.E.
Suite C
Atlanta, Georgia 30305

Deborah L. Dance
H. William Rowling, Jr.
Austin D. Roberson
COBB COUNTY ATTORNEY'S OFFICE
100 Cherokee Street
Suite 350
Marietta, Georgia 30090

Dated: March 3, 2016.

/s/ *Andre T. Tennille III*
Andre T. Tennille III
Georgia Bar No. 940510