**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **JUAN PEREZ,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **1:16-cv-0902-SCJ** |
| **THOMAS BASTIS, in his** | : | |
| **individual and official capacities,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This matter appears before the Court on the Motion for Summary Judgment filed by Defendant Bastis (Doc. No. [91]).

## I.  FACTUAL BACKGROUND[1]

In his Complaint, *as amended*, Plaintiff, Juan Perez, sued Thomas Bastis, a detective employed by the Cobb County Police Department.  Doc. No.  [21], p. 2, ¶ 4.[2]  Plaintiff states that he is suing to recover for the deprivation of his civil

---

[1]  These facts were derived from the admitted portions of the parties' statements of material facts and the record.  Doc. Nos. [91-1], [95-1], [95-2], and [97].

[2]  Plaintiff also named Cobb County, as a defendant; however, the federal and state law claims asserted against Cobb County were dismissed by separate orders of the Court for failure to state a claim and on the basis of sovereign immunity.  Doc. Nos. [19], [75]. The sovereign immunity ruling and dismissal also apply to the official capacity claim against Detective Bastis in Count II of the Complaint.

rights and injuries, resulting from his arrest for allegations of sexual abuse involving his then-four-year-old daughter, GP. Doc. No. [21], ¶ 1.[3]

In Count I of the Complaint, *as amended*, Plaintiff's cause of action is under 42 U.S.C. § 1983 and asserts that Detective Bastis violated his Fourth Amendment rights. Doc. No. [21], p. 17. More specially, Plaintiff alleges that he was subjected to a criminal prosecution (instigated by Detective Bastis) that was carried on maliciously and without probable cause. Id. ¶ 51. In Count II of his Complaint, *as amended*, Plaintiff asserts a claim for malicious prosecution. Id. ¶¶ 55–57.[4]

The Complaint alleges, *inter alia,* that "Detective Bastis convinced a magistrate to issue an arrest warrant by intentionally omitting exculpatory evidence." Doc. No. [21], p. 13, ¶ 34.[5] Plaintiff asserts that Detective Bastis's

---

[3] Plaintiff's daughter is referred to as GP in this litigation to protect her identity.

[4] As correctly stated by Defendant Bastis, Count II of the Complaint, does not expressly mention state law or a federal statute; however, the Court will address Count II as if it is based on Georgia law. Doc. No. [91], p. 9.

[5] The Complaint also alleges that Detective Bastis gave false testimony at the preliminary (probable cause) hearing and withheld evidence. Doc. No. [21], ¶¶ 40, 41. The Court has previously ruled that Plaintiff's malicious prosecution claims based on Detective Bastis's testimony at the probable cause and grand jury proceedings are barred by the doctrine of absolute immunity. Doc. No. [19], p. 19.

The record includes the terms "preliminary hearing" and "probable cause hearing." For purposes of this Order, both terms are the same and in reference to the hearing contemplated by O.C.G.A. § 17-7-23.

actions were objectively unreasonable and without arguable probable cause. Doc. No. [21], ¶ 48.

The criminal prosecution of Plaintiff terminated in his favor via a superior court judge's September 3, 2014 order quashing the first indictment (Doc. No. [95-6]) and a grand jury returning a no bill of the second indictment on August 28, 2014 (Doc. No. [95-7]).

On March 12, 2018, Defendant Basis moved for summary judgment. The motion has been fully briefed and is now ripe for review.[6]

## II.  LEGAL STANDARD

Plaintiff brings this Complaint under 42 U.S.C. § 1983, alleging deprivation of federal constitutional rights secured by the Fourth Amendment of the United States Constitution.[7]

---

[6]  Additional facts will be discussed as necessary in the analysis section of this Order.

[7] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding  for redress . . . .

42 U.S.C. § 1983. "The Fourth Amendment, applicable through the [Due Process Clause of the] Fourteenth Amendment to the States, provides: 'The right of the people to be secure in their persons [and houses] . . . against unreasonable searches and seizures, shall

Federal Rule of Civil Procedure 56(a) provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to

---

not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized.'" Bailey v. United States, 568 U.S. 186, 192 (2013); see also Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) ("The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause."). The Fourteenth Amendment to the United States Constitution provides in relevant part that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 2.

support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). All reasonable doubts should be resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine [dispute] for trial." Id. (citations omitted).

## III. ANALYSIS

Defendant moves for summary judgment on the following grounds: (1) the Plaintiff's Fourth Amendment claim for malicious prosecution is barred because the charges against Plaintiff were supported by probable cause; (2) qualified immunity; and (3) official immunity.

5

The Court will address the qualified immunity ground first, since immunity issues must be resolved at the earliest possible stage of the litigation.

## A. **Qualified Immunity**

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal citations omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)). It "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The immunity protects "all officials except 'the plainly incompetent or those who knowingly violate the law.'" Doe v. Braddy, 673 F.3d 1313, 1317 (11th Cir. 2012) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). It is "'an immunity from suit rather

than a mere defense to liability.'" Scott v. Harris, 550 U.S. 372, 376 (2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, courts must "resolve 'immunity questions at the earliest possible stage in litigation.'" Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

In a qualified immunity analysis, the burden lies first with the official to "'prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting Lee, 284 F.3d at 1190. If the official meets this burden, then "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013) (citing Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996)). In considering the question of qualified immunity at the summary judgment stage, the Court "resolve[s] all the truly disputed facts in accord with Plaintiff's view of the facts; but [this Court] decide[s] the legal consequences of the given facts, that is, whether the supposed facts amount to a violation of the [Fourth] Amendment." Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1320 (11th Cir. 2005); see also Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d 1290, 1305 n.44 (11th Cir. 1998)

("For purposes of resolving the issue of qualified immunity at the summary judgment stage of the case, we must view the evidence in the light most favorable to [plaintiff] and determine whether [his] allegations, if true, would violate clearly established law."). "In doing so, this Court does not make credibility determinations or choose between conflicting testimony, but instead accepts the plaintiff's version of the facts, drawing all justifiable inferences in his favor. Summary judgment is appropriate when 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Pastrana, 446 F. App'x 270, 273 (11th Cir. 2011) (citations omitted).

### 1. *Discretionary Authority*

The Court begins its qualified immunity analysis by considering Detective Bastis's burden of proving that he was acting within the scope of his discretionary authority.

To meet this burden, Detective Bastis must prove that he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The Court looks to

8

"the general nature of the [Detective Bastis's] action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Holloman, 370 F.3d at 1266. To meet the first prong, Detective Bastis "must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." Id. If met, then the second prong requires the Court to determine whether Detective Bastis executed his "job-related function—that is, pursuing his job-related goals—in an authorized manner." Id.

Under the facts of this case, Detective Bastis was a police officer taking out a warrant for an arrest. A police officer's job description authorizes him to make arrests. See also Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). The Court must ask whether the act complained of, here, (i.e., the submission of a probable cause affidavit to a magistrate with omitted information) "if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). Submitting affidavits, if done for a proper purpose, are within an officer's discretionary authority. See id. at 1283 ("We concluded that

9

defendant had acted within his discretionary authority not because that authority included filing unfounded probable cause affidavits, but because his duties included writing and submitting probable cause affidavits.") (citing <u>Jordan v. Doe</u>, 38 F.3d 1559 (11th Cir. 1994)).  Because submitting a probable cause affidavit is a function that falls within Detectvie Bastis's legitimate job description (at the time), and because Detective Bastis performed this job-related function through means that were within his power to utilize, Detective Bastis was acting within the scope of his discretionary authority. Thus, Detective Bastis has met his burden of proving that he was acting within the scope of his discretionary authority, and the burden now shifts to Plaintiff to establish that qualified immunity is not appropriate as to Detective Bastis.  <u>See also</u> <u>Brock v. City of Zephyrhills</u>, 232 F. App'x 925, 927–28 (11th Cir. 2007) ("The act[] of obtaining and executing a warrant for an arrest . . . qualif[ies] as discretionary function[] of law enforcement officers.").[8]

---

[8]  Plaintiff also admits that "[i]n the [Cobb County Police Department] investigation of alleged sexual abuse and child molestation against G.P. by [Plaintiff] and in taking a warrant against him, [Detective] Bastis acted in a discretionary capacity as a police detective." Doc. Nos. [91-1], ¶ 40 and [95-1], ¶ 40. <u>See</u> <u>McCullough v. Finley</u>, 907 F.3d 1324, 1333 (11th Cir. 2018) ("The [plaintiffs] do not dispute that the [defendants] acted within the scope of their discretionary authority, so the burden shifts to the [plaintiffs] to overcome those immunities.").

AO 72A
(Rev.8/82)

## 2. *Two-pronged Inquiry*

To meet his burden of establishing that qualified immunity is not appropriate, Plaintiff must "satisfy the following two-pronged inquiry: (1) whether the facts that [Plaintiff] has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of [Detective Bastis's] alleged misconduct." Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013) (citing Pearson, 555 U.S. at 232).

As to the first prong, Plaintiff alleges a constitutional violation that maintaining a criminal prosecution against him under the circumstances of this case violated the Fourth Amendment.[9]  Accordingly, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether[P]laintiff['s] allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002).  The Court now undertakes such inquiry.

"The Fourth Amendment, applicable through the [Due Process Clause of the] Fourteenth Amendment to the States, provides: 'The right of the people to be secure in their persons [and houses] . . . against unreasonable searches and

---

[9]  "The Eleventh Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.'" Skop v. City of Atlanta, GA, 485 F.3d 1130, 1144 (11th Cir. 2007) (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir.2003)).  Malicious prosecution and § 1983 will be discussed, *infra.*

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized.'"  Bailey v. United States, 568 U.S. 186, 192 (2013).  "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause."  Crosby, 394 F.3d at 1332 (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990)); see also Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) ("The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause.").  Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)).

Qualified immunity protects a police officer if he proves he had probable cause for the arrest, or arguable probable cause, which is a lower standard than actual probable cause. Crosby, 394 F.3d at 1332 (citing Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999)).  Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same

knowledge as the [d]efendants could have believed that probable cause existed to arrest the plaintiff[].” Sosa v. Hames, 218 F. App'x 976, 978 (11th Cir. 2007) (quoting Scarbrough v. Myles, 245 F. 3d 1299, 1302 (11th Cir. 2001)) (internal quotation marks omitted). “Showing arguable probable cause does not, however, require proving every element of a crime.” Grider, 618 F.3d at 1257 (citing Scarbrough, 245 F.3d at 1302–03).

The probable cause requirement is met where the arrest is “objectively reasonable based on the totality of the circumstances.” Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003). An arrest is objectively reasonable if “the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.” Wood, 323 F.3d at 1283 n.3 (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 2003)).

“Whether an arresting officer possesses probable cause . . . naturally depends on the elements of the alleged crime, and the operative fact pattern.” Skop, 485 F.3d at 1137–38 (internal citation omitted); Crosby, 394 F.3d at 1333.

13

### i. **Elements of the alleged crime/operative fact pattern**

Plaintiff was arrested on February 5, 2014.  Doc. No. [91-1], ¶ 33.[10]  At the time, there existed two warrants for Plaintiff's arrest.  One for aggravated sodomy in violation of O.C.G.A. § 16-6-2 (applied for by Defendant Bastis and issued by a Cobb County judge on January 21, 2014) and a second for child abandonment (issued by a Cobb County judge on December 9, 2013).  Doc. No. [91-1], ¶¶ 30, 31 and Doc. No. [91-2], pp. 14–15.[11]

---

[10]  The Cobb County arrest/booking report indicates that the arrest was on February 5, 2014 and the charges were for sodomy/aggravated sodomy (offense date 2/13/2012), sodomy/aggravated sodomy (offense date 5/1/2012), and abandonment of a dependent child (offense date 9/20/2012). Doc. No. [91-2], pp. 12–13.  There appears to be an error in Detective Bastis's statement of material facts (and possibly testimony) in which he states that Plaintiff was arrested on February 12, 2014.  Doc. No. [91-1], p. 8, ¶ 33.

[11]  In his briefing, Detective Bastis relies on the single offense principle to conclude that probable cause for the child abandonment arrest compels the conclusion that Plaintiff was not prosecuted without probable cause.  Doc. No. [96], p. 2.  However, contrary to Detective Bastis's arguments, the Court does not agree that the single offense principle controls in the malicious prosecution (as opposed to false arrest) context.  See Elmore v. Fulton Cty. Sch. Dist., 605 F. App'x 906, 915 (11th Cir. 2015) ("Generally, in contrast to false-arrest claims, 'probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking.' . . . .[T]he Seventh Circuit explained the distinction in this way: when an individual is arrested, the seizure is the same whether the arrest was based on one or multiple grounds; but once an individual is prosecuted, each additional charge imposes additional costs and burdens.") (citing Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007)).  Therefore, there must be an analysis of whether there was probable cause for the arrest of Plaintiff for the crime of aggravated sodomy.

Only the aggravated sodomy warrant was taken out by Detective Bastis[12] and the Court will focus its analysis on said warrant, which is found in the record at Doc. No. [91-2], p. 9.[13]

Under Georgia law,

(a)(1) A person commits the offense of sodomy when he . . . performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another.

(2) A person commits the offense of aggravated sodomy when he . . . commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age . . . .

O.C.G.A. § 16-6-2.

### ii.  **Alleged _Franks_ violation**

As stated above, Plaintiff argues that Detective Bastis fabricated evidence and lied to the magistrate in seeking the aggravated sodomy arrest warrant (Doc. No. [95], p, 5), as follows: Detective Bastis "told a judge that GP had consistently disclosed sexual abuse," when the record shows that "GP continually denied being abused."   Doc. No. [95], p. 6.   It appears that Plaintiff is using the

---

[12]  It appears that the affiant for the child abandonment warrant was Amanda Perez, Plaintiff's former wife.  Doc. No. [91-2], p. 14; see also Doc. No. [91-1], ¶ 1.

[13]  The warrant states that it was issued based on Detective Bastis's affidavit and "other sworn testimony."  Doc. No. [91-2], p. 9.

preliminary hearing testimony to support this statement, as opposed to evidence from the warrant application proceeding.  See e.g., Doc. No. [95-2], p. 1, ¶ 1. Plaintiff has not cited evidence showing that Detective Bastis "fabricated evidence" or "lied" to the magistrate in seeking the warrant.  In addition, the Court has already ruled that any testimony that Detective Bastis presented at the preliminary hearing is subject to the doctrine of absolute immunity.[14]  See Doc. No. [19], p. 19.[15]

Next, Plaintiff asserts that certain information was omitted—or not presented to the magistrate at the time Detective Bastis sought a warrant for Plaintiff's arrest for aggravated sodomy.  More specifically, Plaintiff states "some" of the "exculpatory evidence" that Detective Bastis omitted when he sought the warrant from the magistrate is as follows: (1) the forensic interview of GP where she denied any sexual abuse; (2) the Medlin counseling reports which contain GP's repeated, specific denials of sexual abuse in no less than six

---

[14]  Cf. Melton v. Phillips, 875 F.3d 256, 266 (5th Cir. 2017) ("Indeed, Franks expressly requires a falsehood to be included in the warrant application for there to be a Fourth Amendment violation.").

[15]  Neither party has actually included sufficient facts as to what Detective Bastis said to the magistrate when he applied for the warrant.  The Plaintiff is basing a lot of his argument as to what Detective Bastis testified to at the preliminary/probable cause hearing. In accordance with the above-stated case law, the probable cause analysis focuses on the facts and circumstances within Detective Bastis's knowledge.

separate sessions; (3) the Department of Family and Children's Services reports

substantiating that there had been no abuse; (4) the context—a "nasty" divorce

between Mr. Perez and GP's mother and Mr. Perez voluntarily returning to the

United States just before a scheduled psychological examination for visitation

rights; (5) the two interviews of Mr. Perez in which he waived his rights; (6) the

conclusion reached by Detective Largent (the first detective assigned to the case):

that there "did not appear to be a clear indication of sexual abuse"; and (7) the

second interview of GP—which Detective Bastis conducted himself—in which

GP alleged no sexual abuse.  Doc. No. [21], pp. 12–13.

> The following law applies in the omissions from an arrest warrant context:
>
> In Franks, the Supreme Court held that a warrant violates the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or. . . reckless disregard" for the truth. 438 U.S. at 171, 98 S.Ct. at 2684 (concerning a search warrant affidavit); see United States v. Martin, 615 F.2d 318, 327–29 (5th Cir. 1980) (applying Franks to an arrest warrant affidavit). However, only false statements which are necessary to the finding of probable cause will invalidate a warrant.  Franks, 438 U.S. at 155–56, 98 S.Ct. at 2676.
>
> The reasoning of Franks also applies to omissions from a warrant affidavit.  Martin, 615 F.2d at 328.  "Thus, a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." Madiwale v. Savaiko, 117 F.3d 1321, 1326–27 (11th Cir.1997) (internal quotation marks omitted). Without direct evidence of intentional or reckless conduct, a plaintiff may raise an

AO 72A
(Rev.8/82)

inference of recklessness where "the facts omitted from the affidavit are clearly critical to a finding of probable cause." <u>Martin</u>, 615 F.2d at 329.  Omissions that are made negligently will not invalidate a warrant.  <u>Madiwale</u>, 117 F.3d at 1327. **And "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause."** <u>Id.</u>; <u>see also Dahl v. Holley</u>, 312 F.3d 1228, 1235 (11th Cir. 2002) ("[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause.").[16]

<u>Elmore v. Fulton Cty. Sch. Dist.</u>, 605 F. App'x 906, 910 (11th Cir. 2015) (emphasis added).

In addition, the Eleventh Circuit "has previously reasoned that an officer would not be entitled to qualified immunity when 'the facts omitted . . . were . . . so clearly material that every reasonable law officer would have known that their omission would lead to . . . violation of federal law.'"  <u>Madiwale</u>, 117 F.3d at 1327 (citations omitted).

The Court proceeds "directly to the question of whether [Plaintiff's] allegations and the reasonable inferences drawn from them show that 'inclusion of the omitted facts would have prevented a finding of probable cause.'"  <u>Elmore</u>, 605 F. App'x at 910–11 (citing <u>Madiwale</u>, 117 F.3d at 1327 and <u>Dahl</u>, 312 F.3d at

_____

[16] The <u>Dahl</u> case was abrogated by <u>Lozman v. City of Riviera Beach, Fla.</u>, ---U.S. ----, 138 S. Ct. 1945 (2018) on a different ground.

1235–36 (considering whether the totality of the circumstances provided a sufficient basis to believe that plaintiff had violated the law, her exculpatory statements notwithstanding, and concluding that the omitted facts would not have prevented a finding of probable cause).

As stated above,

> Probable cause exists when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir.2007). "No officer has a duty to prove every element of a crime before making an arrest. Police officers are not expected to be lawyers or prosecutors." Id. (citation and quotation marks omitted). Rather, in assessing probable cause, we deal with "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir.1998) (internal quotation marks omitted).

Elmore, 605 F. App'x at 911.

"When [this Court] consider[s] the facts alleged in the affidavit[] (at Doc. No. [91-2], p. 9), as well as the omitted facts about which [Plaintiff] complains, the universe of facts includes the following . . . ." Elmore, 605 F. App' x at 911.

Detective Bastis was employed as a police officer since 1999, became a detective assigned to the Cobb County Crimes Against Children's Unit in 2008,

had been trained in investigating child molestation and crimes against children and had investigated 600-700 cases of alleged child molestation/crimes against children before 2014.  Doc. No. [91-1], ¶¶ 5–10; Doc. No. [95-1], ¶¶ 5–10. [17]

G.P.'s mother and grandmother contacted the Cobb County Police concerning GP for which Detective Carol Largent investigated under Case No. 12069823.   Doc. No. [91-1],  ¶ 24; Doc. No. [95-1], ¶ 24.  On August 3, 2012, Detective Largent concluded that Case No. 12069823 was unfounded.  Doc. No. [91-1],  ¶ 25; Doc. No. [95-1], ¶ 25.  Additional allegations were made by GP's family and investigated under Case No. 12089190.  These allegations included disclosures by G.P. to clinical psychologist LaRae Williams, Ph.D. (of Medlin Treatment Center), that Plaintiff had touched his face and tongue to G.P.'s naked bottom.   Doc. No. [91-1],  ¶ 26.[18]   When  G.P.  made  this  disclosure,  she

---

[17] Plaintiff's hearsay (Doc. No. [95-1]) objections are overruled.  As correctly noted by Defendant Bastis, hearsay is properly considered in the probable cause determination.  Doc. No. [96], p. 5; see also Trujillo v. Fla. Agency for Health Care Admin., 405 F. App'x 461, 464 (11th Cir. 2010) (holding that plaintiff was mistaken in her hearsay argument and that the district court erred by granting summary judgment; stating "[t]he affidavit is not hearsay; it is not offered to prove the facts stated therein but is offered to show what [the officer] knew when he submitted the probable cause affidavit.").

[18] Plaintiff's objection based on "genuine disputes of fact" is overruled in the absence of support from the record that shows that the disclosure to Dr. Williams was not made.  See L.R. 56.1(B)(2)(a)(1)(i) ("The Court will deem each of the movant's fact admitted unless the respondent . . . directly refutes the movant's fact with concise responses supported by specific citations to evidence.").  The fact that there may be evidence that GP denied sexual

"immediately stated, I change my mind, suggesting that this statement was not true."  Doc. No. [95-2], ¶ 2[19](citing Doc. No. [91-2], p. 25 (lines 6–12).[20]

Largent retired in 2012. Before she retired, Largent stated in reports dated September 14, 2014 that she was placing Case No. 12089190 in an "inactive" status and there was "insufficient evidence to take legal action." Largent stated in her reports that "although the disclosure was bizarre, it was not overtly sexual in nature" and, in a conversation with GP's mother, Amanda Perez, she "recommended that [Amanda Perez] keep G.P. in therapy in the hope that more information could be obtained for clarification." Doc. No. [91-1], ¶ 27; Doc. No. [95-1], ¶ 27.

---

abuse does not create a genuine dispute of fact as to whether she made a disclosure to Dr. Williams.  In addition, Plaintiff agreed in his deposition that he does not have any evidence as to what his daughter, G.P., said to authorities or therapists about alleged molestation. Doc. No. [91-1], ¶ 23 (citing Perez Dep. at 60:14-63:19) and Doc. No. [95-1], ¶ 23.

[19]  Defendant's objection to this evidence is overruled (Doc. No. [97], p. 2, ¶ 2), as the Court has reviewed the entire probable cause transcript.

[20]  G.P.'s young age did not prevent consideration of her statements (under Georgia law). See e.g., Brumbelow v. State, 289 Ga. App. 520, 525, 657 S.E.2d 603, 608 (2008) (child's "tender age certainly factored into the trial court's determination, but did not preclude admission of her statements.") (citing Tucker v. State, 208 Ga. App. 441, 443, 430 S.E.2d 811 (1993) (approving admissibility of five-year-old child's hearsay statements); and Sanders v. State, 182 Ga. App. 581, 584(3), 356 S.E.2d 537 (1987) (statements by four-year-old victim admissible)).

Between September and October, 2012, the Department of Family and Children's Services closed their investigation (of allegations of sexual abuse concerning G.P.) based on G.P.'s interviews, medical examinations, the child's mother, and the child being in therapy. Doc. No. [91-2], p. 62 (lines 5–13). The DFCS representative testified: "[t]here was nothing further that . . . DFCS could do at that time." Id.

From approximately August 2012 to January 2014, G.P. received regular counseling therapy from the Medlin Treatment Center (Medlin) in Marietta, GA. Her therapist during most of this time was Dr. Asia Gifford, a clinical psychologist. Doc. No. [91-1], ¶ 11; Doc. No. [95-1], ¶ 11.

On January 6, 2014, Amanda Perez made another contact with the Cobb County Police Department and the matter was assigned to Detective Bastis. Doc. No. [91-2], ¶ 14.

Detective Bastis's investigation included interviewing G.P. and an interview and review of the treatment notes of G.P.'s therapist, Dr. Gifford. Doc. No. [91-1], ¶ 12; Doc. No. [95-1], ¶ 12.

At the conclusion of Detective Bastis's interview with G.P., he did not regard her statements as an indication of sexual abuse or child molestation, but

concluded that she was talking about being wiped after she "pottied."  Doc. No.
[91-2], ¶ 16.

The interview of Dr. Gifford and her treatment notes showed that: G.P. at
times reported that her father put his face or mouth on her private parts; after
visiting with her father, G.P. asked her grandmother to touch her nose to G.P.'s
private area because that is what her father did; G.P. said that she had
nightmares after talking with her father and said that sometimes she dreamed
about her father touching her and felt mad; that G.P. had told Dr. Gifford that
when she was four years old or younger, her father wrestled with her in bed
while they were both naked and G.P. said that she felt his "tune-tune";[21] and G.P.
said that her father put his "tune-tune" on her face.  Doc. No. [91-1], ¶¶ 16–20.[22]

Dr. Gifford told Detective Bastis that she believed (based on her extensive
treatment of G.P.) that abuse or molestation of G.P. by Plaintiff had "happened."
Doc. No. [91-2], p. 5, ¶17.

G.P.'s evaluation also included statements that G.P. denied that anyone,
including her father, touched her private parts and a denial that anyone asked

---

[21]   "Tune-tune" or "toon-toon" is what G.P. called a penis.

[22]   Plaintiff objects on hearsay grounds.  This objection is controlled by the Court's
conclusion in note 17, *supra*.

or forced her to touch their private parts.  Doc. No. [95-2], ¶ 1 (citing Doc. No.

[91-2], p. 38 (lines 2–13).[23]

In her deposition, the assigned prosecutor, Lindsay Gardner, testified that

she recalled that there were multiple times of G.P. denying sexual abuse.  Doc.

No. [91-6], p. 8[24] (deposition page 30, lines 16–21).[25]

The Court finds that "including the omitted facts when determining

whether probable cause existed to believe that [Plaintiff] committed the offense

of [aggravated sodomy] does not negate the probable cause that the magistrate

judge found for that offense. The conduct alleged fits within the definition of"

aggravated sodomy, i.e., performing a sexual act involving the sex organ of GP

and the mouth of Plaintiff.  Elmore, 605 F. App'x at 911; see also O.C.G.A. §

16-6-2 (defining aggravated sodomy under Georgia law). "And [a] revised

---

[23] Defendant's objections to this statement are overruled on the ground that the Court has reviewed the entirety of the probable cause hearing transcript.

[24] Defendant's objection (Doc. No. [97], p. 3, ¶ 5) is overruled on the ground that the Court has reviewed the entirety of the Gardner deposition.  However, it is not clear how what the prosecutor knew proves what Detective Bastis knew.  Nevertheless, to the extent that Detective Bastis would have reviewed the same records as the prosecutor, the Court accepts this statement as there being some evidence from the treatment records (also reviewed by Detective Bastis) that G.P. denied sexual abuse.

[25] The Complaint asserts a number of alleged omissions that are not addressed with citations to evidence in Plaintiff's Statement of Additional Material Facts (Doc. No. [95-2]), such as facts concerning the context of a "nasty" divorce, Plaintiff's scheduled psychological examination, and Plaintiff's police interviews.  Doc. No. [21], pp. 12–13.

affidavit [to include the omitted facts still] provides sufficient grounds for a prudent person, based on the facts and circumstances, to believe that [Plaintiff] . . .committed the offense [of aggravated sodomy]." Elmore, 605 F. App'x at 911. Thus, "consideration of the omitted material would not have precluded a finding of probable cause to believe" that Plaintiff committed the offense of aggravated sodomy. Id. at 912. In essence, Plaintiff has not proven that the omitted facts were clearly critical to a finding of probable cause. Dahl, 312 F.3d at 1236 n.7.[26]

The facts are also adequate to establish arguable probable cause to believe that Plaintiff committed the offense of aggravated sodomy. Detective Bastis "conducted an investigation and interviewed pertinent witnesses. Despite the conflicting witness statements [of G.P.], and even if [Detective Bastis] had been mistaken, the facts could have led a prudent officer to believe that reasonably trustworthy information established probable cause for [aggravated sodomy]."Elmore, 605 F. App'x at 912. "In other words, [Detective Bastis] is entitled to qualified immunity because the omitted facts were not 'so clearly

---

[26] The case law cited by Defendant Bastis also supports the finding of probable cause. See Rankin v. Evans, 133 F.3d 1425, 1428 (11th Cir. 1998)Marx v. Gumbinner, 905 F.2d 1503, 1504–05 (11th Cir. 1990); Hopper v. Fenton, 665 F. App'x 685, 687 (10th Cir. 2016); Easton v. City of Boulder, Colo., 776 F.2d 1441, 1443 (10th Cir. 1985); and Myers v. Morris, 810 F.2d 1437, 1461 (8th Cir. 1987), abrogated on other grounds by Burns v. Reed, 500 U.S. 478 (1991). Plaintiff's attempt to distinguish this cases are not persuasive.

material that every reasonable law officer would have known that their omission would lead to [an arrest] in violation of federal law.'" <u>Elmore</u>, 605 F. App'x at 912 (citing <u>Madiwale</u>, 117 F.3d at 1327 (quotation marks omitted)).[27]

### B.  Malicious Prosecution:  Probable Cause

The Eleventh Circuit Court of Appeals has "identified malicious prosecution as a violation of the Fourth Amendment and as a viable constitutional tort under § 1983." <u>Blue v. Lopez</u>, 901 F.3d 1352, 1357 (11th Cir. 2018) (citations omitted). "To establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." <u>Id.</u>[28] "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and

---

[27] Having found that probable cause and arguable probable cause existed, the Court is not required to consider the next prong of the qualified immunity analysis (i.e., issue of whether the rights at issue were clearly established at the time of Detective Bastis's alleged misconduct).  <u>See</u> <u>Brown v. Pastrana</u>, 446 F. App'x 270, 274 n.6 (11th Cir. 2011) ("[The Court is] free to consider the elements of qualified immunity in any sequence and to decide the case on the basis of either element that is not demonstrated.") (citation omitted).

[28] A plaintiff has "the burden of demonstrating the absence of probable cause in order to succeed in [his] § 1983 claim." <u>Rankin v. Evans</u>, 133 F.3d 1425, 1436 (11th Cir. 1998).

(4) caused damage to the plaintiff accused." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1256 (11th Cir. 2010) (citations and quotations omitted). "As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." Id. "Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim." Id.

As shown in the above-stated qualified immunity analysis, Plaintiff has failed to show that Detective Bastis acted without probable cause, "a necessary element of [his] § 1983 malicious prosecution claim . . . ." Skop v. City of Atlanta, GA, 485 F.3d 1130, 1144–45 (11th Cir. 2007). According, Detective Bastis is entitled to summary judgment on Count I of the Complaint, for malicious prosecution.

### C.  Official Immunity

The Court further declines to exercise supplemental jurisdiction over any remaining state law claim. See 28 U.S.C. § 1367(c)(3) and United Mine Workers v. Gibbs, 383 U.S. 715, 726–27  (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the

state claims should be dismissed as well."); see also Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997).

## IV.  CONCLUSION

The Motion for Summary Judgment filed  by Defendant Bastis (Doc. No. [91]) is hereby **GRANTED** as to the federal claim in Count I of the Complaint (Doc. No. [21]).

Nothing further remaining for the Court's review, the Clerk is **DIRECTED** to enter judgment in favor of Defendant Bastis as to the following counts of the Complaint (Doc. No. [21]) and then close this case:  Count I *in its entirety* and Count II *in part* (the malicious prosecution, state law *official* capacity claim).[29] The Court declines to exercise supplemental jurisdiction over the remaining state law claim in Count II (i.e., malicious prosecution, *individual* capacity claim).

**IT IS SO ORDERED,** this 6th day of December, 2018.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[29]  As previously stated, the Court's sovereign immunity ruling and dismissal (Doc. Nos. [19], [75]) also applies to the *official* capacity claim against Detective Bastis in Count II of the Complaint.